THE MATHEWS LAW GROUP
CHARLES T. MATHEWS (SBN 55889)
GEORGE S. AZADIAN (SBN 253342)
2596 Mission Street, Suite 204
San Marino, California 91108
Phone: (626) 683-8291
Fax: (626) 683-8295
George@mathewslawgroup.com

Attorneys for Plaintiff,
    KATRINA ANDERSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO BRANCH

| | |
|---|---|
| KATRINA ANDERSON, on behalf of herself and all others similarly situated,<br><br>                          Plaintiff,<br><br>          v.<br><br>IQOR HOLDINGS US, INC., FIRST CONTACT, INC., FIRST CONTACT LLC, and DIRECTV, INC.<br><br>                          Defendants. | CASE NO.  11-cv-0245-SI<br><br>CLASS ACTION<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br>1.  **NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.**<br>2.  **INTENTIONAL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.**<br>3.  **BREACH OF THE CONSENT DECREE ENTERED INTO IN UNITED STATES OF AMERICA V. ALLIED INTERSTATE, INC., NO. 10-CV-04295 (D. MINN. OCT. 22, 2010).**<br><br>Jury Trial Demanded |

---

**SECOND AMENDED CLASS ACTION COMPLAINT**

Katrina Anderson ("Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of counsel, and on information and belief as follows:

## NATURE OF ACTION

1.    Plaintiff brings this action for statutory damages, injunctive relief and any other available legal or equitable remedies, resulting from the illegal actions of iQor Holdings US, Inc., ("iQor"), First Contact, Inc. ("FC-INC.") and First Contact, LLC ("FC-LLC"), national affiliated collection agencies, in negligently and/or willfully placing or having debt collection, warning or other calls placed to her cellular telephone without her prior express consent (sometimes referred to herein as "Prohibited Calls"), in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA").   iQor, FC-INC. and FC-LLC are collectively referred to as "Affiliated Defendants."

2.    Plaintiff also brings this action for damages, injunctive relief and any other available legal or equitable remedies, resulting from Affiliated Defendants' violations of the Consent Decree entered into in the action entitled, United States of America v. Allied Interstate, Inc., No. 10-cv-04295 (D. Minn. Oct. 22, 2010).  (Attached hereto as Exhibit A (the "Consent Decree").)

3.    Plaintiff is a victim of FC-INC's repeated Prohibited Calls and violations of the Consent Decree.  These Prohibited Calls were made by FC-INC on behalf of DIRECTV, Inc. ("DIRECTV").  Worst of all, Plaintiff (and others similarly situated) do not even owe the debt at issue, as the calls were intended for a completely different individual.  Plaintiff was never a customer of DIRECTV and had no prior business relationship with DIRECTV.

4.    Affiliated Defendants are notorious for the practice of seeking debts from the wrong persons.  iQor's largest subsidiary, Allied Interstate, Inc. ("Allied-INC"), recently entered into a Consent Decree with the Federal Trade Commission in the action entitled, United States of America v. Allied Interstate, Inc., No. 10-cv-04295 (D. Minn. Oct. 22, 2010).  (Attached hereto as Exhibit A (the "Consent Decree").)  The Consent Decree required Allied to pay $1.75 million to settle allegations that employees repeatedly tried to collect debts from the wrong person.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction under the Class Action Fairness Act of 2005 (CAFA) because Plaintiff seeks up to $1,500 in statutory damages for each of the numerous calls that were placed to her cellular phone in violation of the TCPA, which, when aggregated among the members of the proposed classes, numbering in the tens of thousands, exceeds $5,000,000. Additionally, Plaintiff is a California citizen and Affiliated Defendants are citizens of Delaware or Minnesota. Finally, Plaintiff seeks to represent numerous class members, who are citizens of various other States.

6.     Venue is proper in the United States District Court for the Northern District of California pursuant to 18 U.S.C. § 1391(b) and 1441(a) because the events giving rise to Plaintiff's claims against iQor occurred within the State of California, Humboldt County.

## PARTIES

7.     Plaintiff is, and at all times mentioned herein was, an individual citizen of the State of California, and resident of Humboldt County. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(32).

8.     Defendant iQor, through its subsidiaries, provides third-party collection services. iQor's clients represent a wide swath of sectors ranging from commercial groups and financial services companies to utilities. iQor, through its subsidiaries, operates approximately 40 call centers in North America, Europe and Asia. iQor is a Delaware corporation, whose principal place of business is 335 Madison Avenue, 27th Floor, New York, New York, 10017. iQor is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(32).

9.     Defendant FC-INC is a Delaware corporation and a subsidiary of iQor and affiliate of FC-LLC. FC-INC operates or, at the delegation of iQor, manages one or more call centers, which make debt collection calls to individuals in the United States. FC-INC is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(32).

10.    Defendant FC- LLC is a Minnesota Limited Liability Company and a subsidiary of iQor and affiliate of FC-INC. FC-LLC operates or, at the delegation of iQor, manages one or

1   more call centers, which make debt collection calls to individuals in the United States.  FC-LLC

2   is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(32).

3       11.     Defendant DIRECTV is, and at all times mentioned herein was, a national

4   broadcast satellite service company and a Delaware corporation, whose principal place of

5   business is 2230 E. Imperial Hwy, El Segundo, California 90245.  DIRECTV does business

6   throughout the country, including this District.  DIRECTV is, and at all times mentioned herein

7   was, a "person," as defined by 47 U.S.C. § 153(32).

8              **PLAINTIFF'S THEORIES OF LIABILITY AGAINST DEFENDANTS**

9       12.     Affiliated Defendants are liable for violations of the injunctive provisions of the

10  Consent Decree.  The injunctive provisions of the Consent Decree apply not only to Allied but

11  also to "its officers, agents, servants, employees, and all persons <u>or entities in active concert or</u>

12  <u>participation with any of them</u> who receive actual notice of this Decree by personal service or

13  otherwise, <u>whether acting directly or through any entity, corporation, subsidiary, division,</u>

14  <u>affiliate,</u> or other device, <u>in connection with collecting or attempting to collect debts</u> . . ."

15  (Consent Decree, §§ II, IV (emphasis added).)

16      13.     iQor is the parent company of Allied-INC and also is the parent company of FC-

17  INC and controlling member of FC-LLC.  iQor, Allied-INC, FC-INC and FC-LLC act in concert

18  or participation with one another for the purpose of collecting debt from individuals in the United

19  States through the placement of collection calls.  Many of the numbers used by Affiliated

20  Defendants to place Prohibited Calls are intentionally untraceable, which is part of the concerted

21  effort shared by Affiliated Defendants to confuse the called party (who is often kept in the dark as

22  to what iQor entity is actually placing the Prohibited Calls).  The names and identities of

23  Affiliated Defendants, including FC-INC and FC-LLC are also purposefully vague and the

24  ordinary consumer is unable to locate any contact information for these entities.

25      14.     On information and belief, at all times relevant herein, iQor, FC-INC and FC-

26  LLC have received actual notice of the Consent Decree.  The Consent Decree was widely

27  publicized and is also disseminated to the public by the Federal Trade Commission through the

28  following government sites:

1    http://www.ftc.gov/os/caselist/0823207/101021alliedinterstatedecree.pdf  and

2    http://www.ftc.gov/opa/2010/10/alliedinterstate.shtm  (Accessed July 22, 2011).

3        15.     iQor, FC-INC and FC-LLC are liable for each others' actions as alleged herein

4    under a joint venture theory of liability.  iQor, FC-INC and FC-LLC, through their common

5    employees, have joint control over the venture of debt collection calls placed to cell phones.

6    iQor, FC-INC and FC-LLC share in the profits of the undertaking and each of the Affiliated

7    Defendants have an ownership interest in the enterprise.

8        16.     iQor is liable for the acts/omissions of FC-INC and FC-LLC under a respondeat

9    superior theory of liability.  Effective January 2010, employees of FC-INC became employees of

10    iQor.  Thereafter, in October and November of 2010, these employees, in their ordinary course

11    of business, placed Prohibited Calls to Plaintiff and violated the Consent Decree as alleged

12    herein.

13        17.     iQor is liable for the acts/omissions of FC-INC and FC-LLC as alleged in this

14    complaint as the alter ego of these entities.  iQor is the dominating owner/member of FC-INC

15    and FC-LLC.  Given the massive statutory damages available under the TCPA, FC-INC and FC-

16    LLC are purposefully undercapitalized in an effort to avoid judgments for violations of the

17    TCPA.  Additionally, effective, January 2010, all employees of FC-INC became employees of

18    iQor.  On October 22, 2010, Allied-INC entered into the Consent Decree, which is also

19    applicable to Affiliated Defendants.  Only two months later, on December 28, 2010, with Allied-

20    INC and FC-INC still in existence, Allied, LLC ("Allied-LLC") and FC-LLC were formed, each

21    as a Minnesota Limited Liability Company.  On information and belief, the formation of these

22    entities was to perpetrate a fraud, circumvent the TCPA and other statutes and circumvent the

23    Consent Decree.  Injustice would result if iQor was treated as a distinct entity.

24        18.     FC-LLC is liable for the actions of FC-INC on a successor liability theory

25    because FC-LLC is a mere continuation of FC-INC -- the only difference is a change in

26    corporate form that occurred shortly after the Consent Decree was entered by the court.  On

27    information and belief, FC-LLC occupies the same office space and employees as FC-INC, and

28

**SECOND AMENDED CLASS ACTION COMPLAINT**

1    was assigned or otherwise assumed FC-INC's contracts with its corporate clients (including the

2    contract with DIRECTV).

3        19.    DIRECTV is one of Affiliated Defendants' many corporate clients who retain

4    Affiliated Defendants to place debt collection calls, warning calls and other calls, which resulted

5    in the Prohibited Calls to Plaintiff.  DIRECTV, as the original creditor on whose behalf the

6    Prohibited Calls were made, is vicariously liable for Affiliated Defendants' violations of the

7    TCPA as alleged herein.  The Federal Communications Commission, the agency empowered to

8    implement the TCPA, has mandated: "[a] creditor on whose behalf an autodialed or prerecorded

9    message call is made to a wireless number bears the responsibility for any violation of the

10   Commission's rules.  Calls placed by a third party collector on behalf of that creditor are treated

11   as if the creditor itself placed the call."[1]

12       20.    Additionally, FC-INC held itself out and was cloaked with the authority of an

13   agent by stating that the calls were from DIRECTV.  When calling the number that appeared on

14   Plaintiff's caller ID, the following message plays:  "Thank you for calling DIRECTV.  Our

15   office is now closed please call back during our normal business hours . . . ."

16                    **PLAINTIFF'S FACTUAL ALLEGATIONS**

17       21.    Plaintiff received numerous Prohibited Calls to her cellular phone on behalf of

18   DIRECTV that were placed by FC-INC.

19       22.    These Prohibited Calls were placed in approximately October through November

20   of 2010.

21       23.    These Prohibited Calls were placed from the number 800-880-9024.  However,

22   Affiliated Defendants use multiple outgoing numbers to place Prohibited Calls.

23       24.    Plaintiff has incurred charges for these Prohibited Calls and the Federal

24   Communications Commission has made clear that "wireless customers are charged for incoming

25   calls whether they pay in advance or after the minutes are used."[2]

26   _____

[1] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act
27   of 1991*, 23 F.C.C.R. 559, at ¶ 10 (2008).

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of
28   1991*, 23 F.C.C.R. 559, at ¶ 7 (2008).

**SECOND AMENDED CLASS ACTION COMPLAINT**

25.     During these Prohibited Calls, Affiliated Defendants used an "automatic telephone dialing system and/or an artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).  During some or all of these calls, Plaintiff would hear a long delay prior to a person speaking or dead air, indicating that an automatic telephone dialing system was used in placing the calls.

26.     Plaintiff has no business relationship with DIRECTV whatsoever and was never a DIRECTV customer.

27.     During one or more of these calls, Plaintiff informed FC-INC that she did not have a DIRECTV account.  Nevertheless, Plaintiff received at least one additional call after informing FC-INC that she was being called in error.

28.     These calls were for the purpose of collecting debt (that Plaintiff did not owe) and were not for emergency purposes as set forth in 47 U.S.C. § 227(b)(1)(A).

29.     Plaintiff did not provide "prior express consent" to receive the Prohibited Calls on her cellular telephone as set forth in 47 U.S.C. § 227(b)(1)(A).

30.     These Prohibited Calls placed by FC-INC were in violation of 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

31.     Plaintiff also brings this action on behalf of herself and on behalf of all others similarly situated (the "**Complaint Class**"), as follows:

**All persons within the United States to whom FC-INC has placed a call to said persons' cellular telephones through the use of an automatic telephone dialing system or an artificial or prerecorded voice, on or after January 18, 2007, where said persons informed FC-INC that FC-INC was calling the wrong person/number.**

32.     Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated (the "**Error Class**"), as follows:

**All persons within the United States to whom FC-INC has placed a call to said persons' cellular telephones through the use of an**

**SECOND AMENDED CLASS ACTION COMPLAINT**

1     **automatic telephone dialing system or an artificial or prerecorded**

2     **voice, on or after January 18, 2007, where such persons were not the**

3     **intended recipients of the call.**

4         33.    Plaintiff brings this action on behalf of herself and on behalf of all others

5 similarly situated (the "**No-Consent Class**"), as follows:

6     **All persons within the United States to whom FC-INC has placed a**

7     **call to said persons' cellular telephones (without their prior express**

8     **consent and not for emergency purposes) through the use of an**

9     **automatic telephone dialing system or an artificial or prerecorded**

10     **voice, on or after January 18, 2007.**

11         34.    Plaintiff brings this action on behalf of herself and on behalf of all others

12 similarly situated (the "**Consent-Decree Class**"), as follows:

13     **All persons within the United States to whom FC-INC, on or after**

14     **October 22, 2010, has placed a call to said person's telephone, after**

15     **such persons informed FC-INC that it was calling the wrong**

16     **number/person.**

17         35.    Affiliated Defendants, their employees and other agents, the Judge to

18 whom this action is assigned and any members of the Judge's staff, and claims for

19 personal injury and/or emotional distress are excluded from the classes.

20         36.    Plaintiff does not know the number of members in the No-Consent Class,

21 Complaint Class, Error Class or Consent-Decree Class, but believes, based on FC-INC's

22 market share and investigation of counsel, that the number is in the tens of thousands, if

23 not substantially higher.  Thus, joinder of all class members is impractical due to the

24 numerosity of the class members and the relatively small value of each member's claim.

25         37.    The Consent Decree specifically requires the retention of records relating

26 to consumer complaints, which will aid in ascertaining and providing notice to the

27 Complaint Class and Consent-Decree Class.  (Consent Decree, § VIII.)  Additionally,

28

**SECOND AMENDED CLASS ACTION COMPLAINT**

1   FC-INC maintains an internal "do not call list" or other records with the phone numbers

2   of individuals who inform FC-INC that they have been called in error.

3          38.     The Internet is replete with discussions between numerous members of the

4   No-Consent Class, Complaint Class, Error Class and Consent-Decree Class.  The

5   following is a sampling, evidencing Affiliated Defendants' egregious violations of the

6   TCPA and the Consent Decree.  These Internet posting are provided as factual support

7   for Plaintiff's contention that numerous other consumers suffered from similar actionable

8   wrongdoing.

9          Christina - 17 Nov 2010
           i keep getting calls from Iqor saying i need to call them.
10         when i finally spoke to someone they asked for Theresa. there is and never
           has been anyone by that name living here.
11         i've asked TWICE for them to STOP calling me!!!
           I'm fed up - STOP CALLING
12         what can i do?

13  (Available at, http://complaintwire.org/Complaint.aspx/mapgBgZl7ACRAwjM1hJ0Mw
14  (accessed on June 3, 2011).)

15         dan - 18 Nov 2010
           Stop calling me you [expletive] idiots!  I hate you and you do not stop
16         bothering me.  [Expletive]  We've talked a long time ago, clarified that I
           wasn't the person you were looking for.  So stop pestering me on daily
17         calls, you bunch of dummies...

18  (Available at, http://complaintwire.org/Complaint.aspx/mapgBgZl7ACRAwjM1hJ0Mw
    (accessed on June 3, 2011).)

19         limoguy62 - 28 Sep 2010
           About 6 months ago i changed my cell # after moving. Within days i
20         started getting calls for someone I've never heard of from these
           [expletive]. At first i explained there was no such person associated with
21         the # and to remove it. When they persisted i asked for a manager only to
           be hung up on. Now they call 2 times a day at least which i let go to
22         voicemail. I have tried calling them but only get a dropped call tone. It
           would be nice if someone who actually had the power to shut these people
23         down would read this forum.

24  (Available at, http://complaintwire.org/Complaint.aspx/ypWFEEI5SwA7nAjLTkJ6WA/2
25  (accessed on June 3, 2011).)

26         Cell phone Calls
           5 Feb 2008
27         I had the 1-800-880-9024 number call my cell phone and left a message
           about direct tv.  I dont even have a direct tv account!!

28

**SECOND AMENDED CLASS ACTION COMPLAINT**

(Available at, http://800notes.com/Phone.aspx/1-800-880-9024/2 (accessed on June 3, 2011).)

     Lisa
     6 Oct 2009
     I have received 2 calls from this number in the past 2 days. When I called back I explained to the gentleman I cancelled my DirectTv account 7 months ago. He had no record of me or my account and did not know why I was being called. I told him I researched this number to find there were several complaints and no one knew why they were being called. He transferred me to customer service and it did not go through......Very annoying!

(Available at, http://whocallsme.com/Phone-Number.aspx/8008809024/2 (accessed on June 3, 2011).)

     FRANCISCO SERNA
     19 Feb 2010
     THEY KEEP CALLING AND I´M NOT SUBCRIBE TO DIRECT TV

(Available at, http://whocallsme.com/Phone-Number.aspx/8008809024/2 (accessed on June 3, 2011).)

     Rachel
     7 Dec 2007
     They called me 6 times yesterday from this phone number and twice from 8773724388. Did not leave a message. I don¢t even have DirecTV. When they called this morning they left a message telling me to call them back between 8 am and 10 pm, but didn¢t say what they were calling for.

(Available at, http://whocallsme.com/Phone-Number.aspx/8008809024/2 (accessed on June 3, 2011).)

     39.     The members of the No-Consent Class, Complaint Class, Error Class and Consent-Decree Class share well-defined, nearly identical, questions of law and fact, which predominate over questions that may affect individual members of the classes. These common questions of law and fact include:

     a.     Whether, on or after January 18, 2007, FC-INC placed any calls (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service.

     b.     Whether, on or after January 18, 2007, FC-INC placed any calls to any telephone number assigned to a cellular telephone service through the use of an

**SECOND AMENDED CLASS ACTION COMPLAINT**

automatic telephone dialing system or an artificial or prerecorded voice, where the person who was called by FC-INC informed FC-INC that it was calling the wrong person/number.

c.      Whether, on or after January 18, 2007, FC-INC placed any calls to any telephone number assigned to a cellular telephone service through the use of an automatic telephone dialing system or an artificial or prerecorded voice, where the person called was not the intended recipient of the call.

d.      Whether, on or after October 22, 2010, FC-INC placed any calls to any telephone number, after such person informed FC-INC that it was calling the wrong number/person.

e.      Whether FC-INC's conduct was knowing and/or willful.

f.      Whether FC-INC can meet its burden of proving that it had obtained prior express consent for such calls to members of the classes.

g.      Whether FC-INC should be enjoined from placing such calls in the future.

40.    Plaintiff and members of the No-Consent Class, Complaint Class and Error Class are entitled to statutory damages as provided for under the TCPA.

41.    Plaintiff and members of the Consent-Decree Class are entitled to seek enforcement of the Consent Decree and have been damaged by FC-INC's violations of the Consent Decree by receiving calls after informing FC-INC that it was calling the wrong person/number.

42.    Plaintiff is asserting claims that are typical of the No-Consent Class, Complaint Class, Error Class and Consent-Decree Class.

43.    Plaintiff will fairly and adequately represent and protect the interests of the classes in that Plaintiff has no interests antagonistic to any member of the classes.

44.    Plaintiff and the members of the classes have all suffered harm as a result of the FC-INC's unlawful and wrongful conduct.  Absent a class action, members of the classes will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and FC-INC will likely

**SECOND AMENDED CLASS ACTION COMPLAINT**

1    continue such illegal conduct.  Substantial class-wide damages are essential to induce

2    FC-INC to comply with federal law and the Consent Decree.

3        45.    Because of the size of the individual class members' claims, few, if any,

4    class members could afford to seek legal redress for the wrongs complained of herein.

5        46.    Plaintiff has retained counsel experienced in handling class action claims

6    and claims involving violations of the TCPA.

7        47.     A class action is a superior method for the fair and efficient adjudication

8    of this controversy.

9        48.    To the extent any of the classes cannot be certified pursuant to Rule

10   23(b)(3) for monetary relief, Plaintiff respectfully requests that such classes be certified

11   pursuant to Rule 23(b)(2) for injunctive relief.

12       49.    FC-INC has acted or refused to act on grounds that apply generally to the

13   classes, so that final injunctive relief is appropriate for the classes as a whole.

14                                **FIRST CLAIM**

15                   **NEGLIGENT VIOLATIONS OF THE TCPA**

16                        **(AGAINST ALL DEFENDANTS)**

17       50.    Plaintiff incorporates by reference all of the above paragraphs of this

18   complaint as though fully stated herein.

19       51.    The forgoing acts and omissions of FC-INC constitute numerous and

20   multiple negligent violations of the TCPA, including but not limited to each and every

21   one of the above-cited provisions of 47 U.S.C. § 227 <u>et seq.</u>

22       52.    As a result of FC-INC's negligent violations of 47 U.S.C. § 227 <u>et seq.</u>,

23   Plaintiff and each of the members of the No-Consent Class, Complaint Class and Error

24   Class are entitled to statutory damages of $500 for each and every violation, pursuant to

25   47 U.S.C. § 227(b)(3)(B).

26       53.    Plaintiff and the members of the No-Consent Class, Complaint Class and

27   Error Class are also entitled to and seek injunctive relief prohibiting such conduct in the

28   future.

**SECOND AMENDED CLASS ACTION COMPLAINT**

54.     FC-INC's clients on whose behalf Prohibited Calls were placed are vicariously liable for such Prohibited Calls.

## SECOND CLAIM

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA

### (AGAINST ALL DEFENDANTS)

55.     Plaintiff incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

56.     The foregoing acts and omissions of FC-INC constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

57.     As a result of FC-INC's knowing and/or willful violations of 47 U.S.C § 227 et seq., Plaintiff and each of the members of the No-Consent Class, Complaint Class and Error Class are entitled to treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

58.     Plaintiff and the members of the No-Consent Class, Complaint Class and Error Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

59.     FC-INC's clients on whose behalf Prohibited Calls were placed are vicariously liable for such Prohibited Calls.

## THIRD CLAIM

### BREACH OF THE CONSENT DECREE

### (AGAINST iQOR, FC-INC and FC-LLC)

60.     Plaintiff incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

61.     Plaintiff and members of the Consent-Decree Class were intended beneficiaries of the Consent Decree because the Consent Decree was entered into by the

1  Federal Trade Commission specifically for their benefit and to prevent the harm to the

2  public suffered by Plaintiff and members of the Consent-Decree Class as alleged herein.

3       62.    Plaintiff and members of the Consent-Decree Class performed all relevant

4  requirements of the Consent Decree by informing FC-INC that it was calling the wrong

5  number/person.

6       63.    The actions of FC-INC as alleged herein constitute multiple violations of

7  the Consent Decree, including:

8      a.   The requirement that when "a consumer, at any time, questions, disputes, or

9           challenges the accuracy or completeness of the information . . . . [there shall

10           not be any] further attempt to collect the debt . . . [until after] an investigation

11           . . . has reasonably concluded that the information is accurate and complete."

12           (Consent Decree, § III(A).)

13      b.   The prohibition against "Communicating more than once with persons other

14           than the consumer for the purpose of obtaining location information about the

15           consumer without the person's consent." (Consent Decree, § IV(A).)

16      c.   The prohibition against "communicating with any person other than the

17           consumer, the attorney of the consumer, a consumer reporting agency if

18           otherwise permitted by law, the creditor, the attorney of the creditor, or the

19           attorney of the debt collector, in connection with the collection of a debt,

20           unless Allied has the prior consent of the consumer." (Consent Decree, §

21           IV(B).)

22       64.    As a proximate result of FC-INC's violations of the Consent Decree,

23  Plaintiff and members of the Consent-Decree Class have been damaged by receiving calls

24  placed by FC-INC, after informing FC-INC that it was calling the wrong person/number.

25  Additionally, Plaintiff and the members of the Consent-Decree Class have incurred

26  charges for such calls and have suffered an invasion of privacy.

27

28

## PRAYER FOR RELIEF

65.     WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the members of the classes the following relief:

a.      An Order, pursuant to Federal Rule of Civil Procedure 23(c) and (g), certifying the proposed No-Consent Class, Complaint Class, Error Class, Consent-Decree Class and appointing Plaintiff's undersigned counsel of record to represent the classes.

b.      An Order issuing an injunction, pursuant to 47 U.S.C. § 227(b)(3)(A), enjoining all defendants from placing any further Prohibited Calls to members of the No-Consent Class, Complaint Class and Error Class and complying with the TCPA.

c.      As a result of defendants' negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each member of the No-Consent Class, Complaint Class and Error Class $500 in statutory damages for each and every violation (each Prohibited Call), pursuant to 47 U.S.C. § 227(b)(3)(B).

d.      As a result of defendants willful and/or knowing violation of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each member of the No-Consent Class, Complaint Class and Error Class treble damages, as provided by statute, up to $1,500 for each and every violation (each Prohibited Call), pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

e.      As a result of Affiliated Defendants' violations of the Consent Decree, Plaintiff seeks damages according to proof at trial.  Once liability is established through this action, the amount of damages incurred by the absent members of the Consent-Decree Class may be separately tried.

f.      An Order holding Affiliated Defendants in contempt and/or sanctioning Affiliated Defendants for violations of the Consent Decree as alleged herein.

g.      An Order forcing Affiliated Defendants to comply with the above referenced provisions of the Consent Decree.

h.      An award of attorneys' fees and costs to counsel.

i.      Such other relief as the Court deems just and proper.

**TRIAL BY JURY**

66.     Plaintiff demands a jury trial on all claims


Dated:  July 22, 2011                    THE MATHEWS LAW GROUP
                                         CHARLES T. MATHEWS
                                         GEORGE S. AZADIAN

                                         By: /s/ George S. Azadian
                                         George S. Azadian,
                                         Attorneys for Plaintiff
                                              Katrina Anderson

**SECOND AMENDED CLASS ACTION COMPLAINT**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-cv-04295-PJS -AJB |
| | ) | |
| ALLIED INTERSTATE, INC., a corporation, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

## CONSENT DECREE

**WHEREAS**, Plaintiff, the United States of America, has commenced this action by filing the Complaint herein; Defendant Allied Interstate, Inc. (õAlliedö) has waived service of the Summons and Complaint; the parties have been represented by the attorneys whose names appear hereafter; and the parties have agreed to settlement of this action upon the following terms and conditions, without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the Complaint to the date of entry of this Consent Decree and without Allied admitting any of the matters alleged in the Complaint other than jurisdictional facts;

**THEREFORE**, on the joint motion of Plaintiff and Allied, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** as follows:

### FINDINGS

1.      This Court has jurisdiction of the subject matter and of the parties.

2.      The Complaint states a claim upon which relief may be granted against Allied under Sections 5(a), 5(m)(1)(A), 13(b), and 16(a) of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), and 56(a), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p.

3.      Venue in this district is proper under 28 U.S.C. § 1391(b)-(c) and 1395(a) and 15 U.S.C. § 53(b).

4.      The activities of Allied are in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

5.      For purposes of this Consent Decree ("Decree"), the definitions set forth in the FDCPA shall apply.

6.      Allied has entered into this Decree freely and without coercion.  Allied further acknowledges that it has read the provisions of this Decree and is prepared to abide by them.

7.      Plaintiff and Allied, by and through their counsel, have agreed that the entry of this Decree resolves all matters of dispute between them arising from the Complaint in this action, up to the date of entry of this Decree.

8.      Allied has not admitted any of the allegations of wrongdoing set forth in the Complaint, and entry of this Decree is not an admission of any such allegations of wrongdoing or violation of law.  Nonetheless, Allied stipulates and agrees to entry of  this Decree in order to settle and resolve these disputes.

9.      All parties waive all rights to seek appellate review or otherwise challenge or contest the validity of this Decree.  Allied further waives and releases any claim it may have against the Federal Trade Commission, its employees, representatives, or agents.

10.     Allied agrees that this Decree does not entitle it to seek or obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended by

Pub. L. 104-121, 100 Stat. 847, 863-64 (1996), and further waives any right to attorneys' fees that may arise under said provision of law.

        11.     Entry of this Decree is in the public interest.

## DEFINITIONS

For purposes of this Decree, the following definitions shall apply:

        1.     "Commission" or "FTC" means the Federal Trade Commission.

        2.     "Allied" means Allied Interstate, Inc. and its successors and assigns.

## I.    CIVIL PENALTY

**IT IS ORDERED** that:

        A.     Allied shall pay to the Plaintiff a civil penalty, pursuant to Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), in the amount of one million seven hundred fifty thousand dollars ($1,750,000).

        B.     Allied shall make the payment required by this Section on or before the tenth day following entry of this Decree.  Such payment shall be made by electronic fund transfer in accordance with procedures specified by the Office of Consumer Litigation, Civil Division, United States Department of Justice, Washington, D.C. 20530.

        C.     In the event of any default in payment, which default continues for ten (10) days beyond the due date of payment, the entire unpaid amount, together with interest, as computed pursuant to 28 U.S.C. § 1961 from the date of default to the date of payment, shall immediately become due and payable.

        D.     Allied relinquishes all dominion, control, and title to the funds paid to the fullest extent permitted by law.  Allied shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

E. Allied agrees that, in any subsequent civil litigation filed by or on behalf of the Commission to enforce its rights to any payment or money judgment pursuant to this Order, the facts as alleged in the Complaint filed in this action shall be taken as true, without further proof.

## II.  INJUNCTION AGAINST VIOLATIONS OF THE FTC ACT

**IT IS FURTHER ORDERED** that Allied and its officers, agents, servants, employees, and all persons or entities in active concert or participation with any of them who receive actual notice of this Decree by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device, in connection with collecting or attempting to collect debts, are hereby permanently restrained and enjoined from taking the following actions:

A. Making any material misrepresentation expressly or by implication, to collect or to attempt to collect a debt or obtain information concerning a consumer; and

B. Making any material representation, expressly or by implication, that a consumer owes a debt or as to the amount of a debt, unless, at the time of making the representation, Allied has a reasonable basis for making such representation.  ***Provided that***, in those instances in which Allied (a) is required by Section III.A of this Decree to conduct an investigation, (b) has done so, and (c) has reasonably concluded that the information on which Allied relies to collect or attempt to collect the debt is accurate and complete, the conclusions of the investigation shall constitute a reasonable basis.

***Provided further that*** in making representations concerning a debt, Allied can reasonably rely on information from its clients in the absence of a reasonable indication, either from the information itself or from other information received from the consumer, that such information is unreliable or does not substantiate the claim.  A õreasonable indicationö shall take into account the reliability

and source of the information, but shall not require any of the Part III investigational procedures

outlined below, other than taking into account the reliability and source of the information.

## III.    DUTY TO CONDUCT A REASONABLE INVESTIGATION

**IT IS FURTHER ORDERED** that**:**

A.      After the effective date of this Decree, in each and every instance in which:

1.      a consumer, at any time, questions, disputes, or challenges the accuracy or

completeness of the information on which Allied is relying to make any

representation that the consumer owes a debt or as to the amount of a debt;

or

2.      a person acting reasonably would consider the information on which Allied

is relying to make any representation regarding either the existence or the

amount of a debt to be implausible, facially unreliable, or missing essential

information;

Allied shall either close the account and permanently terminate collection efforts in respect to that

instance in which the client placed that debt with Allied or conduct a reasonable investigation into

the accuracy or completeness of such information.  If such disputes are raised during a telephone

call with the consumer, Allied may reasonably provide responsive information or pose reasonable

questions to the consumer, in a manner that complies with applicable law, in an effort to resolve

any such disputes raised by the consumer.  If the consumer continues to question, dispute, or

challenge the debt, Allied shall make no further attempt to collect the debt or report it to a

consumer reporting agency (CRA) until it has completed an investigation and has reasonably

concluded that the information is accurate and complete.  ***Provided*** that, if as a result of its

decision to permanently terminate collection efforts or if following a reasonable investigation,

Allied does not substantiate that the consumer owes the debt, Allied shall not sell the debt or provide it to any other corporate entity other than the client from which it obtained the debt.

*Provided further* that nothing in Sections II and III shall require Allied to conduct an investigation into the accuracy or completeness of the information on which Allied is relying if Allied determines that the consumer's question, dispute, or challenge is frivolous or irrelevant or, to the extent no new material evidence or information has been provided, has already been the subject of a reasonable investigation. Notwithstanding any other provision in this Decree, the Decree shall not restrict or prohibit Allied from complying with any federal or state law requirements, so long as such state law requirements are not inconsistent with federal law.

*Provided further* that if a consumer initiates contact with Allied by any means, Allied may respond to the consumer prior to the completion of the investigation.

B.      For purposes of this Decree, a "reasonable investigation" shall mean an investigation in which Allied objectively evaluates and weighs the relevant information and circumstances, which may include, among other things:

1.      the reliability of the information on which Allied relies in collecting or attempting to collect the debt, including the credibility of the source of that information;

2.      information from Allied's clients, in the absence of a reasonable indication that such information is unreliable, taking into account its nature and source;

3.      the accuracy and completeness of any information Allied has obtained or may obtain from third-party sources, including data aggregators, brokers, or CRAs;

4.      the strength and credibility of any information provided by the consumer questioning, disputing, or challenging the accuracy or completeness of such information or otherwise obtained by Allied and the responsiveness of the consumer to reasonable requests for information;

5.      with respect to information obtained from the consumer, the methods used by Allied to collect the information, which shall be in compliance with applicable laws; and

6.      any other reliable information that contradicts or calls into question the accuracy or completeness of such information.

C.      Subsections A and B of this Section do not affect Allied's obligations to comply with all applicable provisions of the FDCPA or Fair Credit Reporting Act ("FCRA").  A "dispute" under this Section does not necessarily constitute a "dispute" for FDCPA or FCRA purposes.

D.      Compliance with this Section III is effective on the date of this Decree.

## IV.    INJUNCTION AGAINST VIOLATIONS OF THE FDCPA

**IT IS FURTHER ORDERED** that Allied and its officers, agents, servants, employees, and all persons or entities in active concert or participation with any of them who receive actual notice of this Decree by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device, in connection with collecting or attempting to collect debts, are hereby permanently restrained and enjoined from taking the following actions:

A.      Communicating more than once with persons other than the consumer for the purpose of obtaining location information about the consumer without the person's consent or a reasonable belief that the earlier response of the person was erroneous or incomplete and that the

person now has correct or complete location information, in violation of Section 804(3) of the FDCPA, 15 U.S.C. § 1692b(3).

      B.      Except as provided in Section 804 of the FDCPA, communicating with any person other than the consumer, the attorney of the consumer, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector, in connection with the collection of a debt, unless Allied has the prior consent of the consumer given directly to Allied or the express permission of a court of competent jurisdiction, or Allied can show that such communication is reasonably necessary to effectuate a post judgment judicial remedy, in violation of Section 805(b) of the FDCPA, 15 U.S.C. § 1692c(b);

      C.      Engaging in conduct the natural consequence of which is to harass, oppress, or abuse a person, in violation of Section 806 of the FDCPA, 15 U.S.C. § 1692d, including, but not limited to, the following:

            1.      Using obscene or profane language, or language the natural consequence of which is to abuse the hearer, in violation of Section 806(2) of the FDCPA, 15 U.S.C. § 1692d(2); and

            2.      Causing a telephone to ring, or engaging a person in telephone conversation, repeatedly or continuously with the intent to annoy, abuse, or harass the person at the called number, in violation of Section 806(5) of the FDCPA, 15 U.S.C. § 1692d(5). Allied shall take reasonable steps to limit the discretion of individual debt collectors to make such calls.

      D.      Using any false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e, including, but not limited to, representing or implying that (1) any action will be taken, unless at

the time of the representation, such action is lawful and Allied or the creditor intends to take such action; or (2) that any action may be taken when Allied cannot show that, at the time of the representation, there is a reasonable likelihood that such action will be taken, in violation of Section 807(5) of the FDCPA, 15 U.S.C. § 1692e(5).

E.      Engaging in any other act or practice that would violate the FDCPA, 15 U.S.C. §§ 1692-1692p.

## V.      NOTICE REQUIREMENTS

**IT IS FURTHER ORDERED** that:

A.      For a period of five (5) years from the date of entry of this Decree, Allied, whether acting directly or through any business entity, corporation, subsidiary, division, affiliate, or other device, in connection with acting as a "debt collector" in the collection of a "debt" from a "consumer," as those terms are defined in Section 803(6), (5), and (3), respectively, of the FDCPA, 15 U.S.C. § 1692a(6), (5), and (3), shall make the following disclosure clearly and conspicuously on each written collection communication that is sent to a consumer for the purpose of collecting a debt:

> Federal and state law prohibit certain methods of debt collection, and require that we treat you fairly.  You can stop us from contacting you by writing a letter to us that tells us to stop the contact.   Sending such a letter does not make the debt go away if you owe it.  Once we receive your letter, we may not contact you again, except to let you know that there won't be any more contact or that we intend to take a specific action.

> If you have a complaint about the way we are collecting this debt, please write to our CONTACT CENTER, [current physical address], email us at [current email address], or call us toll-free at [current phone number] between 9:00 A.M. Central Time and 5:00 P.M. Central Time Monday - Friday.

The Federal Trade Commission enforces the Fair Debt Collection
Practices Act (FDCPA). If you have a complaint about the way we
are collecting your debt, please contact the FTC online at
www.ftc.gov; by phone at 1-877- FTC-HELP; or by mail at 600
Pennsylvania Ave., NW, Washington, DC 20580.

The above disclosure shall be given in the language(s) that appear in such communications sent to

consumers.

B.      Allied, whether acting directly or through any business entity, corporation,

subsidiary, division, affiliate, or other device, in connection with acting as a "debt collector" in the

collection of a "debt" from a "consumer," as those terms are defined in Section 803(6), (5), and

(3), respectively, of the FDCPA, 15 U.S.C. § 1692a(6), (5), and (3), shall provide a written

(electronic or paper) copy of the following notice to all officers, servants, agents, and employees

having responsibility with respect to the collection of consumer debts, within thirty (30) days of

the date of entry of this Decree, and to each employee hired for a period of five (5) years after that

date, no later than the time the employee assumes responsibility with respect to the collection of

such debts, and shall secure from each such person, within thirty (30) days of delivery, a signed

and dated statement acknowledging that he or she has read the notice.

Debt collectors must comply with the federal Fair Debt Collection
Practices Act, which limits our activities in trying to collect money
from consumers.

Section 804 of the Act says that, when contacting someone to
acquire location information about the consumer who allegedly
owes a debt, you may not state that the consumer owes a debt. You
also may not contact this person more than once unless the person
asks you to or unless you reasonably believe the person's earlier
response was wrong or incomplete and that the person now has
correct or complete location information to provide to you.

Section 805 of the Act says that, in connection with the collection of
a debt, you may not communicate with any person other than the
consumer for a purpose other than to obtain location information

about the consumer.  This means that you may not reveal the existence of a debt to anyone other than (1) the consumer who allegedly owes the debt or (2) the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator.

Section 806 of the Act states that you may not harass, oppress, or abuse any person in connection with the collection of a debt. Among other things, this includes calling someone repeatedly or continuously to annoy, abuse, or harass the person.  It also includes using obscene or profane language, or language that is likely to abuse the person, when speaking with anyone.

Section 807 of the Act prohibits you from representing or implying that any action, including legal action, will be taken unless at the time of the representation, such action is lawful and there is a clear intent to take such action.  Section 807 also prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information about a consumer.

**Individual debt collectors are liable for their violations of the Act, and may be required to pay penalties if they violate it.**

**Provided** that for purposes of compliance with Part V.B of this Decree, the signature required for the employee's statement that he or she has read the notice may be in the form of an electronic signature.

## VI.    COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Decree:

A.    Within ten (10) days of receipt of written notice from a representative of the Commission, Allied shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in Allied's possession or direct or indirect control to inspect the business operation;

B.      In addition, the Commission is authorized to use all other lawful means, including but not limited to:

        1.      obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69;

        2.      having its representatives pose as consumers and potential clients to Allied, its employees, or any other entity managed or controlled in whole or in part by Allied, without the necessity of identification or prior notice; and

C.      Allied shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Decree.  The person interviewed may have counsel present.

***Provided, however,*** that nothing in this Decree shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## VII.   COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Decree may be monitored:

A.      For a period of three (3) years from the date of entry of this Decree, Allied shall notify the Commission of any changes in its structure or the structure of any business entity that Allied directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Decree, including but not limited to:  incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of

a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Decree; or a change in the business name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any such change in the business entity about which Allied learns less than thirty (30) days prior to the date such action is to take place, Allied shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.      One hundred eighty (180) days after the date of entry of this Decree and annually thereafter for a period of three (3) years, Allied shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which it has complied and is complying with this Decree.  This report shall include, but not be limited to:

1.      A copy of each acknowledgment of receipt of this Decree, obtained pursuant to the Section titled õDistribution of Decree;ö and

2.      Any other changes required to be reported under Subsection A of this Section.

C.      Allied shall notify the Commission of the filing of a bankruptcy petition within fifteen (15) days of filing.

D.      For the purposes of this Decree, Allied shall, unless otherwise directed by the Commissionøs authorized representatives, send by overnight courier all reports and notifications required by this Decree to the Commission, to the following address:

Associate Director for Enforcement
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
RE:  United States v. Allied Interstate, Inc.

Page 13 of  19

Exhibit A Page 13

***Provided*** that, in lieu of overnight courier, Allied may send such reports or notifications by first-class mail, but only if Allied contemporaneously sends an electronic version of such report or notification to the Commission at: DEBrief@ftc.gov.

      E.     For purposes of the compliance reporting and monitoring required by this Decree, the Commission is authorized to communicate directly with Allied.

## VIII.  RECORDKEEPING

      **IT IS FURTHER ORDERED** that, for a period of six (6) years from the date of entry of this Decree, Allied for any of its businesses for which the primary activity is the collection of debts is hereby restrained and enjoined from failing to create and retain the following records:

      A.     Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

      B.     Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

      C.     Consumer files containing the names, addresses, phone numbers, dollar amounts of debt owed, records of collection activity, and amounts collected;

      D.     For every consumer complaint, whether received directly, indirectly, or through a third party, records that include:

            1.     Any complaint and the date received, and the nature of the complaint as reflected in any notes, logs, or memoranda, including a description of the conduct alleged; and

Page 14 of 19

2.      The basis of the complaint, including the names of any debt collectors or supervisors complained about; the nature of any investigation conducted concerning the validity of any complaint; all documents relating to the disposition of the complaint, including records of all contacts with the consumer; Allied's response to the complaint and the response date; whether the complaint was resolved; the date of resolution; and any action taken to correct the conduct complained about.

E.      Copies of all scripts and other training materials related to the collection of debts;

F.      Copies of all advertisements and other marketing materials;

G.      Tape recordings of at least ninety (90) percent of all telephone calls between Allied and anyone it contacts in collecting or attempting to collect a debt, provided that Allied must commence making such recordings no later than one (1) year after the date of this Decree and must maintain these recording for 90 days after they are made; and

H.      All records and documents necessary to demonstrate full compliance with each provision of this Decree, including but not limited to, copies of acknowledgments of receipt required by the Sections titled "Notice Requirements," "Distribution of Decree and FDCPA," and "Acknowledgment of Receipt of Decree," and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## IX.     DISTRIBUTION OF DECREE AND FDCPA

**IT IS FURTHER ORDERED** that, for a period of three (3) years from the date of entry of this Decree, Allied shall deliver a copy of this Decree and the FDCPA to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents, and representatives who engage in conduct related to the subject matter of the Decree; and (3) any business entity

resulting from any change in structure set forth in Subsection A.2 of the Section titled ôCompliance Reporting.ö  For current personnel, delivery shall be within five (5) days of service of this Decree upon Allied.  For new personnel, delivery shall occur prior to them assuming their responsibilities.  For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled ôCompliance Reporting,ö delivery shall be at least ten (10) days prior to the change in structure.  Allied must secure a signed and dated statement acknowledging receipt of the Decree and the FDCPA, within thirty (30) days of delivery, from all persons receiving a copy of the Decree and the FDCPA pursuant to this Section.

## X.      ACKNOWLEDGMENT OF RECEIPT OF DECREE

**IT IS FURTHER ORDERED** that Allied, within five (5) business days of receipt of this Decree as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Decree.

## XI.     RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Decree.

**JUDGMENT IS THEREFORE ENTERED** in favor of Plaintiff and against Allied pursuant to all the terms and conditions recited above.

DATE:__10/22/10_____

s/Patrick J. Schiltz_____

Patrick J. Schiltz
United States District Court Judge

The Plaintiff and Allied, by their respective counsel, hereby consent to the terms and conditions of the Consent Decree as set forth above, which shall constitute a final judgment and order in this matter as to Allied, and consent to the entry thereof.

**FOR THE PLAINTIFF:**
**FOR THE UNITED STATES OF AMERICA**

TONY WEST
Assistant Attorney General
Civil Division
U.S. DEPARTMENT OF JUSTICE

Dated: October 20, 2010

B. TODD JONES
United States Attorney
District of Minnesota

By: ___s/ Gregory G. Brooker_____
Gregory G. Brooker
Attorney ID No. 166066
Assistant U.S. Attorney for the District of Minnesota
300 S. Fourth Street, Suite 600
Minneapolis, MN 55415
Tel: 612-664-5600
Fax: 612-664-5689
Email: greg.brooker@usdoj.gov

EUGENE M. THIROLF
Director
Office of Consumer Litigation

KENNETH L. JOST
Deputy Director
Office of Consumer Litigation

By: ___s/ Alan Phelps_____
ALAN PHELPS
Attorney
Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
PO Box 386
Telephone: 202-307-6154
Facsimile: 202-514-8742
E-mail: alan.phelps@usdoj.gov

**FOR THE FEDERAL TRADE COMMISSION:**


___ s/ Joel Winston_____
JOEL WINSTON
Associate Director for Financial Practices

THOMAS E. KANE
JAMES L. CHEN
Attorneys
Division of Financial Practices
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C.  20580
Tel: (202) 326-3224
Fax: (202) 326-3768

Date: September 7, 2010

**FOR ALLIED INTERSTATE, INC.:**


By: ___ s/ Gregory E. Harmer _____
    GREGORY E. HARMER
    Vice President and Secretary
    Allied Interstate, Inc.


Date: ____ July 26, 2010 _____


**COUNSEL FOR ALLIED INTERSTATE, INC.:**


_ s/ Christine Wilson _____
CHRISTINE C. WILSON
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel: (202) 383-5134
Fax: (202) 383-5414


Date: __ July 26, 2010 _____

1

**CERTIFICATE OF SERVICE**

2
     I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am

3
employed in the City of San Marino, California my business address is The Mathews Law Group, 2596 Mission Street, Suite 204, San Marino California 91108.

4
     I hereby certify that on this day I filed the foregoing:

5
**SECOND AMENDED COMPALINT** with the Clerk of the Court, and served true and correct copies upon class counsel and defendants' counsel via first class mail at the addresses below.

6
Lydia Michelle Mendoza

MANATT PHELPS AND PHILLIPS LLP

7
411355 West Olympic Boulevard

Los Angeles, CA 90064

8
Tel: 310-312-4000

9
Email: lmendoza@manatt.com

10
[X] **FEDERAL** - I declare that I am employed in the office of a member of the bar of this Court at whose

11
direction the service was made.

12
     I declare under penalty of perjury under the laws of the United States of America that the foregoing is a true and correct. I declare that I am employed in the office of a member of the Bar of this

13
Court at whose direction the service was made.

14
This declaration is executed in San Marino, California, on July 22, 2011.

15

16
Andrea M. Mitchell

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**
