1   MARK E. ELLIS – 127159
    GRANT A. WINTER – 266329
2   ELLIS LAW GROUP, LLP
    555 University Avenue, Suite 200 East
3   Sacramento, CA  95825
    Tel: (916) 283-8820
4   Fax: (916) 283-8821
    mellis@ellislawgrp.com
5   gwinter@ellislawgrp.com

6   Attorneys for Defendants CBE GROUP, INC., and CBE GROUP SW, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN FRANCISCO

11  KATRINA ANDERSON, on behalf of herself and       Case No.:  3:11-cv-00245-SI
    all others similarly situated,
12                                                    CBE GROUP, INC., AND CBE GROUP SW,
             Plaintiff,                               INC.'S MEMORANDUM OF POINTS AND
13                                                    AUTHORITIES IN SUPPORT OF THEIR
    v.                                                MOTION FOR SANCTIONS AGAINST
14                                                    PLAINTIFF'S COUNSEL PURSUANT TO 28
    THE CBE GROUP, INC., THE CBE GROUP                U.S.C. § 1927 AND THIS COURT'S
15  SW, INC. and DIRECTV, et al.                      INHERENT POWERS

16           Defendants.                              DATE:           October 28, 2011
                                                      TIME:           9:00 a.m.
17                                                    COURTROOM:      10, 19TH Floor

18

19

20

21

22

23

24

25

26

27

28

**<u>TABLE OF CONTENTS</u>**

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................. 3

III. LEGAL ARGUMENT ........................................................................................ 9

    A.     Sanctions Should Be Granted Pursuant To 28 U.S.C. § 1927 Because Plaintiff's Counsel Vexatiously Multiplied the Proceedings Through Recklessness and Delay. ..... 9

        1.    Plaintiff's Counsel Recklessly Files a Frivolous Complaint Based On Nothing More Than Accusations On An Anonymous Website............................................ 12

        2.    Plaintiff's Counsel Purposefully Withholds Plaintiff's Cell Phone Number And Argues That Defendants Are Presumptively Liable Because They Are Unable To Locate The Number By Themselves. ............................................................. 14

        3.    Plaintiff's Counsel Continues To Delay Dismissal of The Case Even After The Evidence Demonstrates That CBE Had Never Called Ms. Anderson ................ 16

    B.     Sanctions Should Be Granted Against Plaintiff's Counsel Pursuant To The Court's Inherent Power. ................................................................................................ 16

    C.     Amount of Sanctions ................................................................................... 17

IV. CONCLUSION .................................................................................................. 19

## TABLE OF AUTHORITIES

**CASES**

Avirgan v. Hull, 125 F.R.D. 189 (S.D.Fla.1989) ............................................................... 9

B.K.B. v. Maui Police Dept., 276 F.3d 1091 (9th Cir. 2002) ............................................ 9

Barber v. Miller, 146 F.3d 707 (9th Cir. 1998) ............................................................... 10

Chambers v. Nasco, 501 U.S. 32 (1991) ..................................................................... 3, 16

Cotterill v. City and County of San Francisco,
    2010 WL 1223146 (N.D.Cal. March 10, 2010) .................................................. 9, 17, 18

Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001) ............................................................. 3, 17

Foreman v. Data Transfer, Inc., 164 F.R.D. 400 (E.D. Pa. 1995) .................................. 13

Hickory Farms, Inc. v. Snackmasters, Inc., 500 F.Supp.2d 789 (N.D. Ill. 2007) ........... 13

Hyde v. Midland Credit Mgmt., Inc., 567 F.3d 1137 (9th Cir. 2009) ................................ 9

In re Marker, 133 B.R. 340 (W.D.Pa. 1991) ..................................................................... 9

Jason McKee, et al. v. Eskanos & Adler,
    Central District of California, Civil Case No. CV05-7087-AK (2007) ............................ 14

Lancaster v. Trans Union, LLC, 2011 WL 3610051 (N.D.Ill. August 16, 2011) ......... 1, 3, 10, 17

Monotype Imaging, Inc. v. Bitstream, Inc., 376 F.Supp.2d 877 (N.D.Ill.2005) .............. 13

Moser v. Bret Harte Union High School Dist.,
    366 F.Supp.2d 944 (E.D.Cal. 2005) ................................................................................ 9

Plata v. Darbun Enterprises, Inc.,
    2010 WL 3184298, (S.D.Cal. 2010) ..................................... 1, 2, 10, 11, 13, 14, 15, 17

Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980) .................................................... 17

Salstrom v. Citicorp Credit Services, Inc., 74 F.3d 183 (9th Cir. 1996) ...................... 1, 10

Sierra Club Found. v. Graham (1999) 72 Cal.App.4th 1135 ......................................... 2, 11

Starbucks Corp v. Superior Court (2009)168 Cal.App.4th 1436, 86 Cal.Rptr.3d 482 ..... 14

Sycamore Ridge Apartments, LLC v. Naumann (2007) 157 Cal.App.4th 1385 ....... 11, 12, 13


**STATUTES**

28 U.S.C §1927 ....................................................................... 1, 2, 3, 9, 10, 13

47 U.S.C. §227 ...................................................................................................... 4

**TREATISES**

Schwarzer et al., **California Practice Guide: Federal Civil Procedure Before Trial**
  (The Rutter Group 2011) p. 17-86 ...................................................................................... 9

## I.    **INTRODUCTION**

Every attorney knows that before he or she files a lawsuit, he or she must conduct an investigation to determine whether the claims they are making against a particular defendant are legally and factually tenable.  The reason that this requirement is embodied in the common law and numerous statutes is that frivolous lawsuits have real effects on real people (and companies) far beyond the obvious monetary costs of defense.  Baseless lawsuits also clog our already overburdened court system.

This motion is being brought by CBE Group, Inc. and the CBE Group SW, Inc. (collectively referred to as "CBE") because it cannot be disputed that the claims made here by Ms. Anderson's attorneys were completely baseless as to CBE.  The lack of probable cause is profound and manifest in that CBE played *no role* in the alleged transactions whatsoever!  Put another way, *CBE was not "there" at all*; and, it is clear that Ms. Anderson could not have told her attorneys that it was.  Rather, it appears Plaintiff's counsel scoured various websites on the internet, and based upon unverified hearsay from dubious web postings, decided to haul CBE into court because its name appeared occasionally on those websites.  This is a situation where Anderson's added 2+2 which equaled 5.

Indeed, as this court will observe, this case is even more egregious than the sanctions cases which will be discussed *infra*, where those courts found that 28 U.S.C §1927 sanctions were appropriate.[1]  In those cases, the defendant bringing the motion for sanctions was at least *involved* in the transaction at issue, but was nevertheless able to defeat or disprove, as a matter of law, the elements of the claim.  Here, on the other hand, it is worth emphasizing that CBE played *no role* whatsoever and never even participated in the universe of the transactions at issue.  And, to add insult to injury, when CBE tried to get the one critical piece of information (a 10 digit phone number) that would have let everyone know that it played no role whatsoever, Plaintiff's counsel refused to provide the number, unreasonably prolonging CBE's involvement in this ultimately frivolous lawsuit.

///

---

[1] *See e.g.,* **Salstrom v. Citicorp Credit Services, Inc.**, 74 F.3d 183, 185 (9th Cir. 1996); **Lancaster v. Trans Union**, LLC, 2011 WL 3610051, *3-5 (N.D.Ill. August 16, 2011); **Plata v. Darbun Enterprises, Inc.**, 2010 WL 3184298, *4 (S.D.Cal. 2010).

CBE GROUP, INC., AND CBE GROUP SW, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SANCTIONS AGAINST PLAINTIFF'S COUNSEL PURSUANT TO 28 U.S.C. § 1927 AND THIS COURT'S INHERENT POWERS

1    Even after CBE (at Plaintiff's demand) provided proof that it was never involved, Plaintiff's

2  counsel initially refused to dismiss the action unless CBE agreed to a dismissal with, (1) each side

3  bearing its own fees and costs, and (2) without prejudice to the possibility that Plaintiff's counsel

4  would reinstitute the case on behalf of other members of the speculative, putative class.  This CBE

5  refused to do.

6    Consequently, by this motion, CBE requests that this Court levy sanctions against Plaintiff's

7  counsel the Mathews Law Group, as well as individual attorneys Charles Mathews, Patrick Chung, and

8  George Azadian.  CBE seeks these sanctions only in the amount of the attorney's fees and costs that it

9  was forced to expend defending this suit, as well as to reimburse the costs of preparing this motion.

10  (*See* **Declaration of Mark E. Ellis In Support Of Motion For Sanctions** ("Ellis Decl.").)

11    CBE submits Plaintiff's counsel should pay CBE its fees and costs pursuant to 28 U.S.C. §

12  1927 for not only (1) filing a wholly frivolous complaint against CBE without conducting a proper

13  factual investigation, but also (2) purposefully delaying CBE's ability to investigate the claims by

14  withholding critical evidence necessary to show the claims against CBE were factually meritless, and

15  (3) also attempting to demand unreasonable concessions before agreeing to dismiss after it knew the

16  lack of probable cause as to CBE.  *See* **Plata v. Darbun Enterprises, Inc.,** 2010 WL 3184298, *4

17  (S.D.Cal. 2010); *cf.* **Sierra Club Found. v. Graham** (1999) 72 Cal.App.4th 1135, 1156-1157 [Suits

18  with the hallmark of an "improper purpose" include those initiated for the "purpose of forcing a

19  settlement which as no relation to the merits of the claim."].

20    CBE submits $32,973.00 in fees and costs should be paid to CBE under 28 U.S.C. § 1927.  It is

21  merely asking for between $195 and $200 per hour.  Even after the evidence affirmatively

22  demonstrated that CBE played no role in the conduct alleged in the complaint, Plaintiff's counsel

23  refused to dismiss, and instead attempted to shift the burden of proof to CBE, to "prove" it was not

24  involved, by requiring it to provide superfluous declarations, and by attempting to force CBE to

25  stipulate to dismissal on unreasonable terms before they would dismiss the case.  *See* **Sierra Club**

26  **Found.,** *supra*, 72 Cal.App.4th at 1156-1157.

27  ///

28  ///

1    CBE submits it is also separately entitled to costs and fee reimbursement based on this Court's

2  "inherent powers" for the reasons expressed above.  **Chambers v. Nasco**, 501 U.S. 32, 45-46 (1991).

3  CBE submits the facts here demonstrate bad faith on the part of Plaintiff's counsel.

4        From the facts one may infer that Plaintiff's counsel possessed a bad faith motive for

5  withholding the crucial piece of evidence which ultimately proved to exculpate CBE.  **(Ellis Decl., ¶ 9,**

6  **Exhibit E, Anderson's Joint Opposition To Defendants' Motions To Dismiss and Strike, p. 5:5-**

7  **8.**)  The withholding of evidence has been found to constitute bad faith. *See* **Fink v. Gomez**, 239 F.3d

8  989, 992 (9th Cir. 2001).  Such a finding is appropriate here as Plaintiff's refusal to provide the number

9  in the face of Defendant's motion to dismiss this was not coincidental, CBE submits.[2]  Moreover,

10  Plaintiff's counsel here apparently based the foundation of the claims against CBE upon *anonymous*

11  *postings* allegedly found on websites devoted to debtors who post their grievances against debt

12  collectors.  (*See* **Ellis Decl., ¶ 5, Exhibit A, Complaint, at ¶ 25.**)

13        CBE submits Plaintiff's counsel's conduct here presents a paradigmatic example of vexatious,

14  frivolous and reckless action warranting sanctions under section 1927 and/or the Court's inherent

15  powers. *See e.g.*, **Lancaster v. Trans Union**, LLC, 2011 WL 3610051, *3-5 (N.D.Ill. August 16,

16  2011) [attorneys properly sanctioned under section 1927 for insufficient pre-filing investigation where

17  the entire basis for pleadings was an unidentified, unauthenticated document].  If Plaintiff's counsel

18  had properly investigated the case prior to filing the complaint, CBE would not have had to spend <u>any</u>

19  money in its own defense.  Moreover, if Plaintiff's counsel had immediately shared the cellular phone

20  number at the outset, attorney's fees would have been minimal.

21        **II.        STATEMENT OF FACTS**

22        Plaintiff Katrina Anderson, through her counsel, initiated this case on January 18, 2011, by

23  filing a class action complaint.  **(Ellis Decl., ¶ 2, Exhibit A, Complaint.**)  Ms. Anderson has been

24  _____

[2] CBE is not requesting sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11").

25  Nonetheless, cases decided under Rule 11 are illustrative of the reasons that Plaintiff's counsel's behavior should be deemed sanctionable.  Attorneys are obligated to conduct a reasonable and diligent

26  inquiry into the content of material that they file with the court.  **Business Guides, Inc. v. Chromatic Communications Enterprises Inc**., 498 U.S. 533, 547 (1991).  A plaintiff "may not drop papers into

27  the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation" and hope that post-filing discovery establishes the validity of the claims pled.  **Land v.**

28  **Chicago Truck Drivers Union**, 25 F.3d 509, 517-18 (7th Cir. 1994).

CBE GROUP, INC., AND CBE GROUP SW, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR
MOTION FOR SANCTIONS AGAINST PLAINTIFF'S COUNSEL PURSUANT TO 28 U.S.C. § 1927 AND THIS COURT'S
INHERENT POWERS

1 represented continuously throughout this litigation by the lawyers of the Mathews Law Group, of San

2 Marino, California. (**Ellis Decl., ¶ 2**.)

3       The complaint alleges causes of action on behalf of Ms. Anderson and two classes of people

4 who allegedly received calls on their cellular telephones from CBE, which were allegedly placed using

5 an Automated Telephone Dialing System ("ATDS") – as used and defined in the Telephone Consumer

6 Protection Act ("TCPA"), 47 U.S.C. §227 et. seq. – or using a prerecorded voice to leave messages.

7 (**Ellis Decl., ¶ 3, Exhibit A, Complaint, at ¶¶21-22**.)

8       Significantly, the complaint *asserts that the calls were placed by CBE to Ms. Anderson*, in its

9 capacity as a debt collector, in an effort to collect debts on behalf of co-defendant DIRECTV. (**Ellis**

10 **Decl., ¶ 3, Exhibit A, Complaint, at ¶11**.)

11       Despite the allegations that CBE violated the TCPA by calling Ms. Anderson, the complaint

12 was bereft of any specific factual information about the alleged calls. (**Ellis Decl., ¶ 4**.) For instance,

13 the complaint does not say specifically when the calls were allegedly made by CBE, when they were

14 allegedly received, or ***what telephone number*** the calls were allegedly received at by Ms. Anderson.

15 (**Id**.)

16       The complaint does, however, contain a long section (nearly two full pages of text) which is

17 purported to be a reproduction of "discussions between the numerous members of the [putative

18 classes]." (**Ellis Decl., ¶ 5, Exhibit A, Complaint, at ¶25**.) Significantly, the so-called "discussions,"

19 are reproduced in the complaint without context, though they appear to be excerpts cut-and-pasted

20 from postings on websites devoted to consumer debt issues related to, among other things, unwanted

21 telephone calls from collection agencies and creditors. (**Ellis Decl., ¶ 5**.) The postings are essentially

22 anonymous. Some of the posts are accompanied by an alleged author's first and last name, but others

23 authors are listed by pseudonyms such as "John Doe," and no contact information is provided for any

24 of them. (**Id**.) At least two of the apparent postings expressly claim that CBE collects debts on behalf

25 of DIRECTV; one of them reads as follows: "The company is CBE collections group. They are trying

26 to collect for Direct TV [sic]." (**Ellis Decl., ¶ 5, Exhibit A, Complaint, at ¶25**.) No attribution and

27 no supporting foundation is given for this conclusion. Nothing relates this statement to the collection

28 calls put at issue in this case, for these classes. (**Ellis Decl., ¶ 5**.)

- 4 -

1    On January 26, 2011, about eight days after the complaint was filed, Plaintiff effectuated

2    service of process on CBE. (**Declaration of Michael Frost In Support Of Motion For Sanction**

3    ("Frost Decl."), ¶ **3**.)

4    On February 4, 2011, immediately upon being retained, CBE's lead trial counsel Mark Ellis,

5    attempted to contact Plaintiff's lead trial counsel, Charles Matthews of The Mathews Law Group, to

6    introduce himself, and ask for the cellular phone number at which Ms. Anderson alleged she had been

7    contacted by CBE. (**Ellis Decl.,** ¶ **6**.) Mr. Matthews was "unavailable" and never returned the call.

8    (**Ellis Decl.,** ¶**6**.) Instead, an associate, Patrick Chung, at the Mathews Law Group responded to Mr.

9    Ellis's call, and said he was working on the case. (**Id**.)

10   Mr. Ellis explained to Mr. Chung that it was necessary for CBE to have Ms. Anderson's phone

11   number to determine whether CBE had a record of calling her and whether CBE was actually involved.

12   (**Id**.) Mr. Ellis explained that by providing the number, Plaintiff's counsel would be expediting the

13   settlement process, *to wit*, once CBE accessed its records concerning Ms. Anderson's number it would

14   be able to determine whether it placed calls as alleged in the complaint, or whether it did not make the

15   calls at all. (**Id**.) Mr. Ellis followed his telephone call to Mr. Chung with an email explaining the

16   same. (**Ellis Decl.,** ¶**7, Exhibit B**.)

17   Mr. Chung responded to Mr. Ellis over the phone that he would *not* provide the telephone

18   number, and that he would have to check before he could provide it at all, but that he would get back to

19   Mr. Ellis. (**Ellis Decl.,** ¶ **6**.) Unfortunately, he never called Ellis back. (**Ellis Decl.,** ¶ **7**.)

20   On February 16, 2011, CBE and DIRECTV both filed motions to dismiss and motions to strike

21   the complaint, in lieu of filing answers. (**Ellis Decl.,** ¶ **8, Exhibit C, CBE's Motion to Dismiss and**

22   **Strike** ("CBE's Motion"); **Exhibit D, DIRECTV's Motion To Dismiss and Strike** ("DIRECTV's

23   motion").) In their motions, CBE and DIRECTV both affirmed that they could not investigate the

24   validity of Ms. Anderson's claims without the telephone number. (**Ellis Decl.,** ¶ **8, Exhibit C, CBE's**

25   **Motion, p. 3:23; Exhibit D, DIRECTV's Motion, p. 1:11**.)

26   Even after the motions were filed, and despite prompting from defense counsel, Ms.

27   Anderson's attorneys still would not provide the number. (**Ellis Decl.,** ¶ **9**.) Instead, they remained

28   wholly nonresponsive concerning the phone number until March 31, 2011. On that day they filed an

1   opposition to the motions to dismiss. (**Ellis Decl., ¶9.**)  In a preposterous, baseless argument, Plaintiff's

2   counsel asserted that if DIRECTV and CBE *had not* violated the TCPA then it would somehow

3   *already know Ms. Anderson's cell phone number*, by ostensibly looking it up based on Ms. Anderson's

4   name and county of residence.  (**Ellis Decl., ¶ 9, Exhibit E, Anderson's Joint Opposition To**

5   **Defendants' Motions To Dismiss and Strike, p. 5:5-8.**) Thus, Plaintiff's counsel argued, Ms.

6   Anderson was *entitled to rely* on a *presumed inference* that DIRECTV and CBE had violated the

7   TCPA, simply because they had not already figured out what Anderson's cell phone number was! (**Id.**)

8   Of course, this argument was fallacious because it was premised on the false foundation that CBE was

9   part of some relevant transaction with DIRECTV.

10      On April 8, 2011, Defendants filed their replies to Ms. Anderson's opposition to the motions to

11   dismiss, and DIRECTV once again put Plaintiff's counsel on notice that the phone number was

12   necessary in order to investigate the validity of the complaint. (**Ellis Decl., ¶ 10, Exhibit F,**

13   **DIRECTV's reply, p.4:23 and fn. 5.**) DIRECTV explained that it had over 19 million subscribers

14   and "[w]ith no description of the calls, and no identification of specific dates, times or Plaintiff's phone

15   number, DIRECTV cannot investigate whether her complaint has any basis in fact, or ascertain it

16   defenses." (**Id.**)  DIRECTV's pleading explained that it was *inherently unfair* to permit a plaintiff to

17   withhold evidence which could so easily lead to an exculpation of liability.  (**Id.**)

18      Of course the same inherent unfairness was applicable to CBE.  CBE is a large debt collection

19   agency that is assigned to collect debts. (**Frost Decl., ¶ 9.**) There was no way that it could accurately

20   identify whether it had called a single phone number based only on the name and county of residence

21   of the number's owner. (**Frost Decl., ¶ 9-11.**) But, too many variables prevented CBE from making

22   such a determination.  For instance, people often have more than one phone number.  Also, there is

23   often more than one person with the same name living in the same area. (**Id.**)  In order to determine

24   whether it had called Ms. Anderson's alleged number, CBE needed to know ***the actual phone number***

25   that belonged to **this** Ms. Anderson.  (**Id.**)  CBE attempted, but could find no number affiliated with

26   Ms. Anderson.  (**Frost Decl., ¶ 11.**)

27      The Court denied both CBE and DIRECTV's motions to dismiss on April 18, 2011.  (**Ellis**

28   **Decl., ¶ 11, Exhibit G, Order Denying Motions.**)  Yet even thereafter, Plaintiff's counsel still

1   withheld the telephone number for *ten* more days.  On April 28, 2011, counsel for CBE and DIRECTV

2   met telephonically with one of Plaintiff's attorneys, Mr. George Azadian.  (**Ellis Decl., ¶ 12.**)  Mr.

3   Azadian was not the same attorney who had originally refused to provide the telephone number.  (**Id.**)

4   During the April 28, 2011 conference call, more than three months after the complaint was filed, after

5   repeated entreaties for the phone number, Mr. Azadian finally revealed, for the first time, Ms.

6   Anderson's phone number.  (**Id.**)

7         Within just two business days of receiving the phone number, by May 2, 2011, CBE was able

8   to use the number to run queries from its database, and to make an affirmative determination that it *had*

9   *never* called Ms. Anderson's phone number as alleged in the complaint.  (**Ellis Decl., ¶ 13.**)

10        Attorneys for CBE and DIRECTV then scheduled another telephone conference with Mr.

11  Azadian for May 4, 2011, in hopes that the complaint would be dismissed right away.  However, Mr.

12  Azadian sent an email on May 4, 2011, cancelling, and the teleconference had to be rescheduled for

13  two days later. (**Ellis Decl., Exhibit M, Azadian Email of May 4, 2011.**)  The teleconference

14  eventually took place on May 6.  (**Ellis Decl., ¶ 14.**)  CBE's counsel, Mr. Ellis, explained that CBE

15  had not called Ms. Anderson, that the allegations in the complaint were untrue, and that the case must

16  be dismissed.  (**Id.**)  Mr. Azadian agreed to dismiss the case, but only on the condition that CBE would

17  first provide him with a declaration from one of its officers stating that CBE had not called Ms.

18  Anderson's phone number.  (**Id.**)  Mr. Azadian later confirmed his agreement to dismiss in an email.

19  (**Ellis Decl., ¶ 14, Exhibit H, Azadian Email of May 6, 2011.**)

20        CBE submitted the Declaration of Thomas Lockard, CBE's Manager of Regulatory

21  Compliance.  (**Ellis Decl., ¶15.**)  Mr. Lockard is a managerial employee of CBE, who has personal

22  knowledge of CBE's collection activities, computer systems and database. He affirmed that based

23  upon his investigation, CBE did not call Ms. Anderson's cell phone number phone during the period

24  alleged.  (**Ellis Decl.¶ 15, Exhibit J, Lockard Declaration.**)

25        On May 11, 2011, CBE provided Mr. Lockard's declaration to Plaintiff's counsel, and again

26  asked for the case to be immediately dismissed. (**Ellis Decl., ¶ 15, Exhibit I, Ellis Email of May 11,**

27  **2011.**)  However, instead of dismissing immediately, on May 12, 2011, Plaintiff's counsel demanded

28  *still another* declaration, swearing that Mr. Lockard was "authorized" to make the first declaration on

1  behalf of CBE.  (**Ellis Decl., ¶ 16, Exhibit K, Azadian Email of May 12, 2011.**)  In the interest of

2  effectuating dismissal quickly, CBE acquiesced and provided Plaintiff with a supplemental declaration

3  by Michael Frost, CBE's Senior Vice President and General Counsel, on May 16, 2011. (**Ellis Decl., ¶**

4  **17, Exhibit J, Frost Declaration; Exhibit L, Ellis Email of May 16, 2011.**)

5          After providing the second declaration, CBE, again, fully expected the case to be dismissed

6  immediately; however, Plaintiff's counsel delayed, *yet again*, now arguing about the terms of the

7  stipulation for dismissal!  (**Ellis Decl., ¶ 18.**)  Mr. Azadian insisted that _CBE_ draft the stipulation for

8  dismissal.  (**Id**.)  CBE wasted no time drafting the stipulation and sent it to Plaintiff's counsel on May

9  16, 2011, the same day CBE forwarded the Declaration of Michael Frost.  (**Ellis Decl., ¶ 18, Exhibit**

10  **M, Grant Winter Email of May 16, 2011.**)

11          Instead of executing the stipulation and dismissing the case, however, Mr. Azadian sent an

12  email, on May 17, 2011, demanding that the stipulation include a provision that each side would bear

13  its own costs, and a provision that the dismissal was to be "without prejudice to the proposed classes."

14  (**Ellis Decl., ¶ 19, Exhibit M, Azadian Email of May 17, 2011.**)  CBE had not previously agreed to

15  bear its own costs, nor had it agreed to any sort of dismissal without prejudice as to the putative class

16  members.  CBE's counsel was forced to spend a large part of the day on May 17, 2011 – and more fees

17  – corresponding with Mr. Azadian before he agreed to a full dismissal without the unwarranted extra

18  terms in the stipulation.  (**Ellis Decl., ¶ 20, Exhibit M, Email Correspondence of May 16 and May**

19  **17.**)

20          CBE prepared a new stipulation for dismissal, based on language agreed to by all parties, and

21  distributed it on May 19, 2011.  (**Ellis Decl., ¶ 21.**)  Each party executed the stipulation and it was filed

22  on May 19, 2011.  (**Id**.)  The court signed an order dismissing CBE with prejudice on May 24, 2011,

23  more than four months after the baseless complaint had been filed.  (**Ellis Decl., ¶21, Exhibit N,**

24  **Order of Dismissal**.)

25  ///

26  ///

27  ///

28  ///

### III.     LEGAL ARGUMENT

**A.**     **Sanctions Should Be Granted Pursuant To 28 U.S.C. § 1927 Because Plaintiff's Counsel Vexatiously Multiplied the Proceedings Through Recklessness and Delay.**

28 U.S.C. § 1927 (hereafter "section 1927") provides a means for a court to award fees against "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." **28 U.S.C. § 1927**; **Cotterill v. City and County of San Francisco**, 2010 WL 1223146, *6 (N.D.Cal. March 10, 2010) [findings and recommendation adopted in **Cotterill v. City and County of San Francisco**, 2010 WL 1910528 (N.D.Cal. May 11, 2010)]; Schwarzer et al., **California Practice Guide: Federal Civil Procedure Before Trial** (The Rutter Group 2011) p. 17-86, §17:630.

Section 1927 is not specific to any statutory cause of action, but applies to any civil suit in federal court. **Hyde v. Midland Credit Mgmt., Inc.**, 567 F.3d 1137, 1141 (9th Cir. 2009). The statute allows for remedies against individual attorneys as well as law firms that vexatiously multiply proceedings. **Moser v. Bret Harte Union High School Dist.**, 366 F.Supp.2d 944, 985 (E.D.Cal. 2005) [attorney and attorney's employer, a law firm, sanctioned under section 1927]; **In re Marker**, 133 B.R. 340, 346 (W.D.Pa. 1991) ["A law firm, not just individual attorneys, also may be sanctioned under this provision."]; **Avirgan v. Hull**, 125 F.R.D. 189, 190-191 (S.D.Fla.1989) [attorney and attorney's firm both liable under section 1927 where attorney formulated and put into motion litigation tactics and law firm carried out the tactics].

In the Ninth Circuit, before sanctions are awarded pursuant to section 1927, there must be a showing of "bad faith," which is a term of art. *See* **B.K.B. v. Maui Police Dept.**, 276 F.3d 1091, 1107 (9th Cir. 2002). *In this context*, "bad faith" means either (1) frivolity combined with recklessness; or (2) intentional harassment. (**Id**; Schwarzer, *supra*, at p. 17-81, §17:636.4) As the Ninth Circuit explained, "for sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." (**B.K.B.**, *supra*, 276 F.3d at 1107.

///

1    Case authority demonstrates that an attorney may be sanctioned under section 1927 where the

2    attorney multiplies the proceedings through a *"combination"* of actions including making baseless

3    allegations in the complaint. *E.g.*, **Salstrom v. Citicorp Credit Services, Inc**., 74 F.3d 183, 185 (9th

4    Cir. 1996). In **Salstrom**, *supra*, the Ninth Circuit upheld sanctions where the *"cumulative effect of the*

5    *attorney's conduct"* constituted bad faith multiplication of the proceedings. (**Id**.) One of three aspects

6    of the attorney's conduct that the court took into consideration was the *"substance of the claims*

7    *asserted,"* in the pleadings. (**Id**.)

8    Many cases stand for the proposition that in awarding section 1927 sanctions, a court may take

9    into consideration an attorney's failure to properly investigate the allegations in a complaint as part of

10   the basis for awarding sanctions. *See e.g.*, **Barber v. Miller**, 146 F.3d 707, 711 (9th Cir. 1998) [in

11   determination of whether section 1927 sanctions were appropriate, court took complaint into

12   consideration]; **Lancaster**, *supra*, 2011 WL 3610051, *3-5; **Plata**, *supra*, 2010 WL 3184298, *4.

13   **Lancaster**, *supra*, is analogous to this case. There, plaintiff's counsel was sanctioned under

14   section 1927 for filing a complaint alleging emotional distress and other special damages without

15   sufficient evidence to support the claims. **Lancaster**, *supra*, 2011 WL 3610051, *3-5. The claims

16   there were based solely, as the claim here, on an unauthenticated document that was attached to the

17   complaint. The document purported to show that the plaintiff had taken out a loan with a high interest

18   rate. (**Id**.) The court found that it was disingenuous for the plaintiff's lawyers to contend that the

19   unauthenticated document was proof of emotional distress when it was not only unauthenticated, but

20   also wholly irrelevant to the damages at issue. The court ruled that the filing of the case was

21   "unreasonable and vexatious." (**Id**.) The court found Plaintiff's counsel was properly sanctioned for

22   the full amount of the defendant's attorney's fees. (**Id**.)

23   **Plata**, *supra*, 2010 WL 3184298, *4, also illustrates a circumstance where a recklessly filed

24   baseless complaint, taken in combination with other actions, warranted a grant of sanctions against a

25   plaintiff's attorney. There, the attorney filed a lawsuit in federal court, on the basis of diversity

26   jurisdiction, on behalf of 18 plaintiffs whom the complaint alleged, all "reside" in Tijuana, Mexico.

27   (**Id**. at 2.) The attorney's sole method of investigating the validity of the allegations, including the

28   "residency" allegations, was an interview with *two of the 18* plaintiffs. The two plaintiffs purported to

1  "make decisions on behalf of the group," so the attorney did not meet with the other 16 plaintiffs. (**Id**.)

2  Eventually, it came to light that the allegations concerning the plaintiffs' "residency" were wrong.

3  Some of the plaintiffs were living in California and applying for U.S. citizenship, thus destroying

4  complete diversity. (**Id**.)

5        The Court found that the attorney's failure to properly investigate the jurisdictional allegations

6  in the complaint was one element in a "pattern of conduct that unreasonably multiplied the

7  proceedings[...]." (**Id**. at 4.) Moreover, the attorney *repeatedly failed* to conduct a proper

8  investigation. (**Id**.) Throughout the litigation, the issue of subject matter jurisdiction was called into

9  question, yet instead of taking the cue to conduct a proper investigation, the attorney continued to rely

10  on the bogus information he had received from the two spokes-plaintiffs. (**Id**.) The court found that

11  this conduct was reckless. (**Id**.)

12        Similar to the instant case, another aspect of the pattern of conduct which multiplied the

13  proceedings in **Plata** was that the attorney was "*intentionally dilatory" in responding to the*

14  *defendant's requests for information* "which would have brought the [citizenship] issue to light months

15  earlier." (**Id**.) The attorney delayed in responding to plaintiff's *jurisdictional discovery* – limited

16  discovery, served prior to the commencement of discovery on other issues – until he was ordered by

17  the court to do so. The court found the slow response demonstrated bad faith because it was intended

18  to cause a delay. (**Id**.) Moreover, the court held that it was a cause of multiplication of the

19  proceedings. (**Id**.)

20        Legal standards related to the tort of malicious prosecution also illuminate the type of litigation

21  conduct that *constitutes bad faith warranting sanctions*. A hallmark of the malice element required for

22  a malicious prosecution action is the filing of a lawsuit for the improper purpose of extorting a

23  settlement. *See e.g.*, **Sycamore Ridge Apartments, LLC v. Naumann**, 157 Cal.App.4th 1385, 1407

24  (2007); **Sierra Club Found.**, *supra*, 72 Cal.App.4th at 1156-1157. The fact that Plaintiff's counsel

25  here did not conduct a reasonable investigation suggests that the most they could have reasonably

26  hoped for was a nuisance settlement. **Sycamore Ridge Apt.**, *supra*, 157 Cal.App.4th at 581.

27        Moreover, the fact that counsel refused initially to disclose the telephone number and later did

28  not dismiss the case immediately once CBE affirmatively proved its innocence both further show

1   improper motive. (**Id**. ["Continuing an action one discovers to be baseless harms the defendant and

2   burdens the court system just as much as initiating an action known to be baseless from the outset."].)

3   Indeed, the refusal to disclose in the face of the motion to dismiss gives rise to the inference that

4   Plaintiff's counsel knew, or at least suspected that turning over the number would lead to immediate

5   dismissal.

6        In the instant case, like in **Plata**,  Plaintiff's counsel not only recklessly filed a baseless

7   complaint as to CBE,  but then they *purposefully* withheld Plaintiff's cellular telephone number, even

8   after Defendants specifically asked for it and explained the importance of the number for the purpose

9   of resolving the case.  By <u>refusing</u> to turn it over, Ms. Anderson was able to avoid dismissal at the

10  pleading stage.[3]  Then, even after evidence became available that CBE had not violated the TCPA,

11  Plaintiff's counsel continued to delay CBE's dismissal, trying to extract a cost waiver and requiring

12  CBE to submit superfluous declarations.

13  **1.      Plaintiff's Counsel Recklessly Files a Frivolous Complaint Based On Nothing More
14          Than Accusations On An Anonymous Website.**

15       It is apparent, based on the allegations in the complaint, that Plaintiff's counsel did not conduct

16  a reasonable investigation in order to determine whether CBE ever called Ms. Anderson's cellular

17  phone.  It is worth noting that the allegations against CBE could not have been based on information

18  *given to Plaintiff's counsel by Ms. Anderson*, because, of course, it is clear *CBE* never called Ms.

19  Anderson.  (**Ellis Decl., ¶¶ 13-15, Exhibit J, Lockard Declaration.**)

20       Instead, the face of the complaint itself tells the most probable story of why CBE was named as

21  a Plaintiff, as it contains nearly two pages worth of purported excerpts of "postings" from websites

22  devoted to debt or complaints about telephone calls.  Plaintiff's counsel likely used these "postings" to

23  come to the erroneous conclusion that CBE was the company that called Ms. Anderson.  If Ms.

24  Anderson believes, as alleged in the complaint, that she was called by a debt collector collecting on

25  _____

26  [3] As discussed *supra*, Plaintiff's counsel affirmatively used CBE's lack of Ms. Anderson's cell phone
    number as an argument in support of their opposition to the motions to dismiss.  They baselessly (and
    preposterously) attempted to persuade the court that Ms. Anderson was *entitled to an inference that*
27  *CBE had violated the TCPA, <u>because</u> it did not have Anderson's cell phone number*.  (**Ellis Decl., ¶ 9,
    Exhibit E, Anderson's Joint Opposition To Defendants' Motions To Dismiss and Strike, p. 5:5-**
28  **8.**)

behalf of DIRECTV, her counsel could have easily typed in a basic search engine query such as "DIRECTV debt collection" and the anonymous postings would have been at their finger tips.

In hindsight, it seems apparent that besides looking at those websites, Plaintiff's counsel took no other affirmative measure to investigate whether CBE was involved at all. This virtual wholesale failure to investigate is just the sort of "shoot first – look second" conduct prohibited by the rules governing vexatious litigation, including section 1927 and Rule 11. Website postings are notoriously untrustworthy for any purpose other than showing what *exists* on the internet. *See e.g.*, **Hickory Farms, Inc. v. Snackmasters, Inc.**, 500 F.Supp.2d 789, 801 (N.D. Ill. 2007); **Monotype Imaging, Inc. v. Bitstream, Inc.**, 376 F.Supp.2d 877, 884-885 (N.D.Ill.2005). Put bluntly, such posting are essentially worthless for the purpose of proving *the truth of the matters* asserted in the postings and in most cases would never be admissible. **Hickory Farms**, *supra*, at 801.

To file a complaint against CBE on the basis of such sketchy information was clearly reckless under **Plata's** analysis. **Plata**, *supra*, 2010 WL 3184298, at *4. Not only are the postings completely untrustworthy – they are anonymous – and using them as the basis of a complaint requires too many broad, foundationless assumptions. For instance, it would have to be assumed that CBE is the only collection agency DIRECTV employs. It would also have to be assumed that the references in the postings pertain to the same time period when Ms. Anderson was allegedly was called. Those assumptions cannot be taken for granted, and in fact, when Ms. Anderson's attorneys took them for granted, the result was the reckless filing of a frivolous complaint. **Plata**, *supra*, 2010 WL 3184298, *4.

CBE suffered losses besides just money that are attributable to Plaintiff's counsel's recklessness. Although monetary expenses for defense costs are the most quantifiable loss, this frivolous lawsuit harmed CBE and its employees in a different way. *See* **Sycamore Ridge Apartments, LLC**, *supra*, 157 Cal.App.4th at 1412 [being forced to defend a baseless claim in foreign venue harms the defendant psychologically and financially, and burdens the system]. Responding to the suit cost CBE lost productivity and distraction trying to find a record of a nonexistent telephone call, and concerns about huge, ruinous liability. (**Frost Decl., ¶ 5.**) *See e.g.*, **Foreman v. Data Transfer, Inc.**, 164 F.R.D. 400, 403-405 (E.D. Pa. 1995) [TCPA class action lawsuits potentially give

1  rise to "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class

2  or to any benefit to defendant."]; **Starbucks Corp v. Superior Court,** 168 Cal.App.4th 1436, 1451,

3  86 Cal.Rptr.3d 482, 493 (2009) [a defendant's exposure in a class action lawsuit based on statutory

4  damages is often so great and potentially so ruinous that the defendant has no choice but to settle, even

5  if the case is meritless]. Litigation, especially the threat of class action liability, takes its toll on *real*

6  *people* and it is a "traumatic experience for conscientious individuals who are unfairly accused of

7  wrongdoing." (**Ellis Decl., ¶ 22, Exhibit P, Order Awarding Attorneys Fees,** issued in **Jason**

8  **McKee, et al. v. Eskanos & Adler,** Central District of California, Civil Case No. CV05-7087-AK

9  (2007)(*see also* CBE's Request For Judicial Notice.)   As Chief Judge Alex Kozinski explained in

10  **McKee,** *supra,* "[a] courtroom is not a casino where litigants get to spin the wheel of fortune in hope

11  of hitting the jackpot." (**Id**.)  Yet, that is precisely how Plaintiff's counsel treated this case, filing

12  against CBE with no real investigation, or actual supporting evidence (**Plata**, *supra*), and shifting the

13  burden to CBE to prove its own innocence.

14      2.       **Plaintiff's Counsel Purposefully Withholds Plaintiff's Cell Phone Number And Argues That Defendants Are Presumptively Liable Because They Are Unable To**

15                  **Locate The Number By Themselves.**

16        It was also reckless that Plaintiff's counsel initially refused requests to provide Ms. Anderson's

17  cell phone number before CBE was forced to respond to the complaint.

18        The importance of the cellular telephone number was made explicitly clear to Plaintiff's

19  counsel almost immediately after the complaint was served.  On February 4, 2011, Mr. Ellis explained

20  to Patrick Chung of the Mathews Law Group that the number was necessary to determine whether

21  CBE had a record of calling Ms. Anderson. (**Ellis Decl., ¶ 6.**)

22        Nonetheless, Ms. Anderson's attorneys ignored or refused to respond to Mr. Ellis's requests for

23  the number.  (**Id**.)  A fair inference as to why the number was not supplied is that Anderson's counsel

24  knew CBE would use the information in its motion to dismiss if the number was shown not to be in

25  CBE's collection database, thus demonstrating it had never collected against Ms. Anderson.

26        Plaintiff's counsel was again reminded of the importance of providing the phone number on

27  February 16, 2011, when CBE and DIRECTV both filed motions to dismiss and to strike.  In their

28  motions, CBE and DIRECTV both pointed out that they could not investigate the validity of Ms.

1    Anderson's claims without the telephone number.  (**Ellis Decl., ¶ 8, Exhibit C, CBE's Motion, p.**

2    **3:23; Exhibit D, DIRECTV's Motion, p. 1:11**.)

3          Instead of providing the telephone number Plaintiff only responded by arguing in her

4    opposition that CBE and DIRECTV had *admitted liability by asking for the number*.  (**Ellis Decl., ¶ 9**

5    **Exhibit E,  p. 5:5-8**.) Apparently, Ms. Anderson's attorneys believed that because CBE and

6    DIRECTV did not *already know* the telephone number, that CBE and DIRECTV must have called Ms.

7    Anderson "by mistake," which Plaintiff's counsel alleged was a violation of the TCPA. (**Id**.)

8          Ms. Anderson argued that the fact that CBE and DIRECTV had requested the number

9    *supported an inference* that that they had violated the TCPA. (**Id**.)  Ms. Anderson urged that that

10   inference should be weighed in her favor in a determination on the motions to dismiss/strike. (**Id**.)

11          Plaintiff's counsel's refusal to provide the phone number appears to have been designed to be

12   tactical *trap*, so to speak; first, they hoped this would create an inference that would support Ms.

13   Anderson's opposition to CBE and DIRECTV's motions.  Indeed, counsel alleged, "Anderson is

14   entitled to such an inference." (**Id**.)  It is apparent that Plaintiff's counsel withheld the phone number

15   in a bad faith effort to prove this so called "inference."  Second, it prevented CBE and DIRECTV from

16   doing their own due diligence as to whether DIRECTV had ever assigned the number to CBE.

17          Even after the Court issued a ruling on the motions to dismiss/strike on April 18 2011, Ms.

18   Anderson's attorneys continued to withhold the number for ten more days! (**Ellis Decl., ¶ 12**.)

19   Plaintiff's counsel was not *only* tactically withholding the number to create some sort of purported

20   "inference" of liability, but, like in **Plata**, was also inexcusably delaying the investigation. **Plata**,

21   *supra*, WL 2010 318 4298, *4.

22          It was not until April 28, 2011, three months after the complaint was filed, that Mr. Azadian,

23   upon vociferous pleas by Defense counsel, revealed what the telephone number was.

24          After the number was revealed, the process of CBE's exculpation began almost instantly.

25   Within a mere two business days CBE affirmatively determined that it *had not* called Ms. Anderson's

26   phone number.  (**Ellis Decl., ¶ 13**.)

27          Plaintiff's counsel vexatiously multiplied the proceedings, dragging the case out for months.

28   ///

3.     **Plaintiff's Counsel Continues To Delay Dismissal of The Case Even After The Evidence Demonstrates That CBE Had Never Called Ms. Anderson**

Alas, after learning that the allegations in the complaint were utterly frivolous, CBE hoped that Ms. Anderson would effectuate dismissal immediately.  Unfortunately, it took nearly another 20 days before a stipulation for dismissal was filed because of Plaintiff's counsel's delays.

On May 6, 2011, CBE explained that it had not called Ms. Anderson, that the allegations in the complaint were untrue, and that the case must be dismissed.  (Ellis Decl. ¶ 14.)  Mr. Azadian initially agreed to unconditionally dismiss the case, but then he only agreed to do so on the condition that a representative of CBE provide him with a written declaration that CBE never called Ms. Anderson. **(Ellis Decl., ¶14, Exhibit H, Azadian Email of May 6, 2011.)**

CBE provided Mr. Lockard's declaration to Plaintiff's counsel on May 11, 2011. **(Ellis Decl., ¶ 15.)**   However, instead of dismissing immediately, on May 12, 2011, Plaintiff's counsel demanded that CBE supplement Mr. Lockard's declaration with statements showing that he was authorized to make the declaration.  In light of Mr. Lockard's own statements concerning his office and duties at CBE, this was a superfluous demand.  It also further demonstrates that Plaintiff's counsel completely lacked urgency regarding the dismissal of a party that had been recklessly dragged into this frivolous case.

Then, Plaintiff's counsel presumptuously insisted that CBE's counsel spend the time and effort to draft a stipulation for dismissal.  However, instead of executing the stipulation CBE drafted, Plaintiff's counsel again changed the terms of the agreement and demanded that the stipulation include a provision to dismiss "without costs," and a provision that the dismissal was to be "without prejudice to the proposed classes." **(Ellis Decl., ¶ 18, Exhibit M, Azadian Email of May 16, 2011.)**  CBE was again forced to waste more time and money working to effectuate dismissal of a case that should never have been filed.

**B.     Sanctions Should Be Granted Against Plaintiff's Counsel Pursuant To The Court's Inherent Power.**

A federal court, of course, is not helpless to control the conduct of the attorneys and the litigants which appear before it.  In **Chambers**, *supra*, 501 U.S. at 45-46, the United States Supreme

- 16 -

1    Court left no question that a court may levy fee-based sanctions when a party acts in bad faith,

2    vexatious, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in

3    the litigation for an improper purpose.  Conduct that is "tantamount to bad faith" is sanctionable.

4    **Roadway Express, Inc. v. Piper**, 447 U.S. 752, 767 (1980); **Cotterill**, *supra*, 2010 WL 1223146 at

5    13.  In **Fink**, *supra*, 239 F.3d at 992, the Ninth Circuit stated that "[s]anctions are available for a

6    variety of types of willful actions, including recklessness when combined with an additional factor

7    such as frivolousness, harassment, or an improper purpose."

8         The instant case is just such a scenario where recklessness has been combined with

9    frivolousness and improper purpose to add up to bad faith and much unnecessary expense.

10   **C.    Amount of Sanctions**

11        If the court finds that the entire proceedings were affected by counsel's unreasonable and

12   vexatious conduct, all of the non-offending party's costs, expenses and attorney's fees may be assessed

13   as sanctions. *See e.g.*, **Cotterill**, *supra*, 2010 WL 1223146 at *15; **Lancaster**, *supra*, 2011 WL

14   3610051, at * 3-5; **Plata**, *supra*, 2010 WL 3184298, at *4.

15        The entire proceeding against CBE was infected by Plaintiff's counsel's unreasonable conduct.

16   Plaintiff's counsel first recklessly filed a complaint based on statements found on an anonymous

17   website.  After that, Plaintiff's counsel withheld key information in the form of the cell phone number,

18   preventing CBE from proving its innocence.  Then finally, after giving CBE the phone number,

19   Plaintiff's counsel continued to act vexatiously about the declarations and the terms of the dismissal.

20   The so-called "case" against CBE was affected by vexatious multiplication from beginning to end.

21        Calculation of sanctions in the form of attorney's fees is based upon a lodestar figure.

22   **Cotterill**, *supra*, 2010 WL 1223146 at 15.  The lodestar is calculated by multiplying the number of

23   hours expended on the litigation by a reasonable hourly rate.  (**Id**.)  There is a strong presumption that

24   the lodestar represents a reasonable fee.  (**Id**.)

25        In the present case, from the time Plaintiff served CBE with the complaint, until CBE was

26   dismissed, CBE's attorneys expended not less than 131 hours on the case.  (**Ellis Decl.**, ¶ **23**.)  Of that

27   total time, CBE's lead trial counsel, Mark Ellis, spent approximately 85.40 hours working on the case

28   prior to the dismissal.  (**Id**.)  CBE was charged $200.00 per hour for Mr. Ellis's time.  (**Id**.)

1   Accordingly, CBE was charged $17,080.00 for Mr. Ellis's services up until the time the case was

2   dismissed.  (**Id.**)  Mr. Ellis's legal services have been compensated at a rate of between $350 and $400

3   in Sacramento. (**Ellis Decl., ¶ 23**.)

4         Daniel McGee was another partner at Mr. Ellis's firm throughout most of the case until CBE

5   was dismissed. (**Ellis Decl., ¶ 24**.)  Mr. McGee spent not less than 17.20 hours on the case.  (**Id.**)

6   CBE was charged $195.00 per hour for Mr. McGee's services.  (**Id.**)  Accordingly, CBE was charged

7   $3,354.00 for Mr. McGee's services prior to the dismissal.  (**Id.**)

8         Grant Winter is an associate attorney at Mr. Ellis's firm.  (**Ellis Decl., ¶ 25**.)  Mr. Winter spent

9   not less than 29.10 hours working on the case prior to the dismissal. (**Id.**)   CBE is charged $195 per

10  hour for Mr. Winter's services.  (**Id.**)  Accordingly, CBE was charged $5,674.50 for Mr. Winter's

11  services prior to the dismissal.  (**Id.**)

12        In total, CBE was charged $26,108.50 in attorneys' fees – for work done by Mr. Ellis, Mr.

13  McGee and Mr. Winter – prior to the dismissal. (**Ellis Decl., ¶26**.)

14        CBE is also entitled to fees for time spent working on this motion up to the present.  **Cotterill**,

15  *supra*, 2010 WL 1223146 at 15 [defendants were entitled to fees from the beginning of the Plaintiff's

16  counsel's vexatious behavior, through the court's ruling on the motion for sanctions].

17        Mr. Winter has spent 35 hours preparing this motion at the rate of $195.00 per hour.

18  Accordingly, Mr. Winter's total attorneys' fees for preparing this motion are $6,825.00.  (**Ellis Decl., ¶**

19  **28**.)

20        Additionally, CBE has accrued $39.52 in costs, including shipping of documents to the Court

21  and producing copies of documents. (**Ellis Decl., ¶ 29**.)  CBE is entitled to such costs as well.

22  **Cotterill**, *supra*, 2010 WL 1223146 at 15.

23        Thus, CBE requests that this court award sanctions in the amount of $32,973.00, consisting of

24  attorney's fees prior to the dismissal, attorneys fees spent preparing this motion and costs.

25  ///

26  ///

27  ///

28  ///

1

## IV.    <u>CONCLUSION</u>

2        For the reasons stated above, CBE respectfully requests that this court order Plaintiff's counsel,

3    Charles Mathews, Patrick Chung, George Azadian and the Mathews Law Group, to pay sanctions in

4    the amount of $32,973.02, to Defendants CBE Group, Inc. and CBE Group SW, Inc.

5    Dated: September 20, 2011                    ELLIS LAW GROUP, LLP

6

7                                          By _____*/s/ Mark E. Ellis*_____
                                               Mark E. Ellis
8                                              Attorney for Defendants CBE GROUP, INC., AND
                                               CBE GROUP SW, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Maria Gutierrez, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause. My business address is 555 University Avenue, Suite 200 East, Sacramento, CA 95825.

On September 20, 2011, I served the following document(s) on the parties in the within action:

**CBE GROUP, INC., AND CBE GROUP SW, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SANCTIONS AGAINST PLAINTIFF'S COUNSEL PURSUANT TO 28 U.S.C. § 1927 AND THIS COURT'S INHERENT POWERS**

| | |
|---|---|
| X | **VIA ELECTRONIC SERVICE**: The above-described document(s) will be delivered electronically through the Court's ECF/PACER electronic filing system, as stipulated by all parties to constitute personal service, to the following: |
| | **BY MAIL**: I am familiar with the business practice for collection and processing of mail. The above-described document(s) will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at Sacramento, CA on this date, addressed as follows: |

| | |
|---|---|
| Charles T. Mathews<br>The Mathews Law Group<br>2596 Mission Street<br>Suite 204<br>San Marino, CA 91108 | Attorneys for<br>Katrina Anderson |
| Patrick Chung<br>The Mathews Law Group<br>2596 Mission Street<br>Suite 204<br>San Marino, CA 91108 | Attorneys for<br>Katrina Anderson |
| Becca Wahlquist<br>Manatt, Plelps & Phillips, LLP<br>11355 W. Olympic Blvd.<br>Los Angeles, CA 90064 | Attorneys for<br>DIRECTV |

I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on September 20, 2011.

By: _____
Maria Gutierrez

- 20 -